FILED
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION

JUN 0 5 2019

JAMES W. McCORMACK, CLERK
By:_____
                        DEP/CLERK

| | |
|---|---|
| **AMY LOGISTICS, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) Civil Action No. ___3:19-cv-00166 DPm___ |
| | ) |
| **vs.** | ) |
| | ) |
| **GREAT WEST CASUALTY COMPANY,** | This case assigned to District Judge ___MARSHALL___ |
| | and to Magistrate Judge___VOLPE___ |
| **Defendant**. | ) |

## NOTICE OF REMOVAL

Defendant Great West Casualty Company ("Great West" or "Defendant"), by and through undersigned counsel, hereby provides notice pursuant to 28 U.S.C. § 1446 of removal of the above-captioned case from the Circuit Court of Mississippi County, Arkansas to the United States District Court for the Eastern District of Arkansas. The grounds for removal are as follows:

1.      Plaintiff Amy Logistics, LLC ("Plaintiff") commenced this action by filing a Complaint for Declaratory Judgment and Damages ("Complaint") on April 15, 2019 in the Circuit Court of Mississippi County, Arkansas, and the case was docketed as No. 470CV-19-43(CT).

2.      Defendant was served with a Summons and copy of the Complaint on April 22, 2019. On May 24, 2019, the Court entered an Agreed Order of Extension granting Defendant an extension up to and include June 5, 2019 within which to file its response to the Complaint. True and exact copies of the Complaint, Summons, and Agreed Order of Extension are attached hereto as collective Exhibit A.

3.     Pursuant to 28 U.S.C. § 1446, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).  This Notice of Removal is timely, as it has been filed within 30 days after Defendant's June 4, 2019 receipt of a copy of a "paper" from which it first ascertained that the case is one which is or has become removable.

4.     This Notice of Removal has also been filed within one year of the commencement of the action, the time allowed by law under 28 U.S.C. § 1446(c).

5.     The time for Defendant to answer, move, otherwise respond to the Complaint has not yet expired.

6.     Concurrent with the filing of this Notice of Removal, Defendant is serving this Notice on Plaintiff's counsel and filing a copy of the Notice with the Clerk of the Circuit Court of Mississippi County, Arkansas.  Venue is proper in this Court pursuant to 28 U.S.C. § 83(a)(1)(5) and 1441(a), because the United States District Court for the Eastern District of Arkansas, Jonesboro Division, is the federal judicial district embracing the Circuit Court of Mississippi County, Arkansas, where this action was originally filed.

7.     As set forth below, this case is removable to federal court based on diversity jurisdiction under 28 U.S.C. § 1332.

**DIVERSITY OF CITIZENSHIP**

8.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists where (1) the suit is between citizens of different states, and (2) the

2

amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007).

9.      "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *Id.*  Complete diversity of citizenship exists between the parties to this action.

10.      As alleged in the Complaint, Plaintiff, Amy Logistics, LLC, is an Arkansas limited liability company with its principal place of business in Craighead County, Arkansas. (Complaint, ¶ 4).  The citizenship of a limited liability company also includes "the citizenship of each of its members." *OnePoint*, 486 F.3d at 346.  Upon information and belief, all members of Amy Logistics, LLC are citizens of Arkansas.

11.      As alleged in the Complaint, Defendant "is a foreign corporation with its principal place of business at 1100 West 29th Street, South Sioux City, Nebraska 68776-0277." (Complaint, ¶ 5).  Thus, Defendant is not a citizen of Arkansas. *See* 28 U.S.C. § 1332(c)(1) (providing that for purposes of removal, a corporation is deemed to be a citizen of the state "by which it has been incorporated" and the state "where it has its principal place of business").

12.      Because Defendant does not hold citizenship in the same state as Plaintiff, complete diversity exists between the parties to this action.

## AMOUNT IN CONTROVERSY

13.      The amount in controversy requirement of 28 U.S.C. § 1332 is also satisfied because Plaintiff seeks more than $75,000.00 in damages, exclusive of interest and costs.

14.      Where the amount in controversy is not apparent from the face of the complaint, the removing party "must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000" and is entitled to supplement the Complaint with such evidence.

3

*Peterman v. Tinley*, No. 3:07CV00047-WRW, 2007 WL 1589549, at *1 (E.D. Ark. Jun. 1, 2007). To trigger the 30 day time period for removal, the relevant document must "set forth sufficiently detailed and unequivocal statement from which the defendant may unambiguously ascertain" that the amount in controversy is met. *Gibson v. Clean Harbors Environmental Servs., Inc.*, 840 F.3d 515, 519-20 (8th Cir. 2016).

15.     The face of the Complaint in this case does not clearly demonstrate that the amount in controversy exceeds the jurisdictional minimum. In the Complaint, Plaintiff seeks, *inter alia*, damages against Great West based on alleged claims for breach of contract, unjust enrichment, promissory estoppel, and violation of the Arkansas Deceptive Trade Practices. (Complaint, ¶¶ 40, 46, 51, 57). However, Plaintiff does not specify the total amount of damages sought; rather, Plaintiff vaguely alleges that it "has incurred damages" and describes its unspecified amount of damages as "including" costs of defense in a separate proceeding and "$25,000.00 paid in settlement" of that proceeding. (Complaint, ¶¶ 40, 46). The Complaint is ambiguous as to the total amount of damages sought and, if anything, indicates that the damages may be below $75,000.00.

16.     In the course of settlement discussions, Plaintiff specifically disclosed to Defendant for the first time that the amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs. On June 4, 2019, Plaintiff's counsel sent an email to defense counsel stating that "Amy Logistics will be seeking in excess of $100,000 for lost profits arising from its forced closure." June 4, 2019 email correspondence, attached hereto as Exhibit B.

17.     Federal courts in the Eighth Circuit have found that similar settlement communications constitute "other papers" within the meaning of 28 U.S.C. § 1446(b)(3) and therefore may serve as grounds for establishing the amount in controversy for purposes of

removal based on diversity jurisdiction. *Gibson*, 840 F.3d at 521 (8th Cir. 2016) (recognizing that "a settlement letter or similar correspondence from the plaintiff to the defendant may constitute 'other paper' for purposes of § 1446(b)(3)"); *Wang v. Pacific Cycle, Inc.*, 530 F. Supp. 2d 1048, 1051 (S.D. Iowa 2008) ("As a general matter, settlement demands are relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim.") (citation omitted); *LaPree v. Prudential Financial*, 385 F. Supp. 2d 839, 849 (S.D. Iowa 2005) (finding "settlement proposals" admissible "to determine the amount in controversy"). Federal courts in other jurisdictions have also relied on settlement communications to establish the amount in controversy for purposes of removal. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim"); *Wilson v. Belin*, 20 F.3d 644, 651 n. 8 (5th Cir. 1994) ("Because the record contains a letter, which plaintiff's counsel sent to defendants stating that the amount in controversy exceeds [the jurisdictional limit], it is apparent that removal was proper."); *Vermande v. Hyundai Motor Am., Inc.*, 352 F. Supp. 2d 195, 200-01 (D. Conn. 2004) ("[T]his Court agrees . . . that § 1446(b) is not limited to papers filed in the litigation and that the reference to 'other paper' in the statute can include pre-removal correspondence between the parties, including as here, settlement offers."); *Archer v. Kelly*, 271 F. Supp. 2d 1320, 1322 (N.D. Okla. 2003) (holding that "[t]he demand letter attached to the Notice of Removal" was sufficient proof of the amount in controversy); *Martin v. Mentor Corp.*, 142 F. Supp. 2d 1346, 1349 (M.D. Fla. 2001) ("Defendants may use a variety of documents, including a written settlement demand, as an 'other paper' under 28 U.S.C. § 1446(b) to determine if the case is removable.").

18.     Because the Complaint does not plainly and unambiguously indicate that the amount in controversy exceeds the jurisdictional limit, Great West first ascertained that the case

was removable upon receipt of the June 4, 2019 correspondence from Plaintiff's counsel. *Gibson*, 840 F.3d at 519 (holding that "the thirty day removal period set forth in § 1446(b)(3) does not begin to run until the defendant receives from the plaintiff . . . other paper[s] from which the defendant can unambiguously ascertain" the amount in controversy).

19.   Because both of the requirements for federal diversity jurisdiction are satisfied, this case is removable by Defendant.

WHEREFORE, Notice is given that this action is removed from the Circuit Court of Mississippi County, Arkansas to the United States District Court for the Eastern District of Arkansas.

Dated: June 4, 2019.

Respectfully submitted,

Robert F. Tom (Ark. Bar No. 2013026)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: 901.526.2000
Facsimile: 901.577.0845
rtom@bakerdonelson.com
*Counsel for Great West Casualty Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2019, a true and correct copy of the foregoing was served by email and U.S. Mail, postage prepaid, on the following:

Vincent O. Chadick
Philip A. Elmore
QUATTLEBAUM, GROOMS & TULL, PLLC
4100 Corporate Centre Drive, Suite 310
Springdale, Arkansas 72762
vchadick@qgtlaw.com
pelmore@qgtlaw.com

# EXHIBIT A



IN THE CIRCUIT COURT OF MISSISSIPPI COUNTY, ARKANSAS
CIVIL DIVISION

AMY LOGISTICS, LLC                                      PLAINTIFF

v.                          Case No. 47 OCV -19-43(CT)

GREAT WEST CASUALTY COMPANY                            DEFENDANT

## SUMMONS

THE STATE OF ARKANSAS TO DEFENDANT:
GREAT WEST CASUALTY COMPANY

A lawsuit has been filed against you. The relief demanded is stated in the
attached complaint. Within 30 days after service of this summons on you
(not counting the day you received it) – or 60 days if you are incarcerated in
any jail, penitentiary, or other correctional facility in Arkansas – you must
file with the clerk of this court a written answer to the complaint or a motion
under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's
attorney, whose name and address are:

    Philip A. Elmore
    Quattlebaum, Grooms & Tull & PLLC
    4100 Corporate Center Drive, Suite 310
    Springdale, Arkansas 72762

If you fail to respond within the applicable time period, judgment by default
may be entered against you for the relief demanded in the complaint.

Leslie Mason, Circuit Clerk

Address of Clerk's Office:                    CLERK OF COURT
Leslie Mason                                  Brandyn See, D.C.
Mississippi County Circuit Clerk              [Signature of Clerk or Deputy Clerk]
P.O. Box 1498                                 Date: 4-15-19 @ 9:00 AM
Blytheville, Arkansas 72316                   [SEAL]

No. _____  This summons is for GREAT WEST CASUALTY COMPANY.

## PROOF OF SERVICE

☐ On _____ [date], I personally delivered the summons and complaint
to the defendant at _____[place]; or

☐ After making my purpose to deliver the summons and complaint clear, on
_____ [date] I left the summons and complaint in the close proximity of
the defendant by _____ [describe how the summons and complaint
was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a
member of the defendant's family at least 18 years of age, at _____
[address], a place where the defendant resides; or

☐ On _____ [date] I delivered the summons and complaint to _____
[name of individual], an agent authorized by appointment or by law to receive
service of summons on behalf of _____ [name of defendant];

☐ On _____ [date] at _____ [address], where the defendant
maintains an office or other fixed location for the conduct of business, during
normal working hours I left the summons and complaint with _____
[name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and
I served the summons and complaint on the defendant by certified mail,
return receipt requested, restricted delivery, as shown by the attached signed
return receipt

☐ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I
mailed a copy of the summons and complaint by first-class mail to the
defendant together with two copies of a notice and acknowledgment and
received the attached notice and acknowledgment form within twenty days
after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

My fee is $ ____.

To be completed if service is by a sheriff or deputy sheriff:

Date: _____    SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

To be completed if service is by a person other than a sheriff or deputy sheriff:

Date: _____    By: _____
[Signature of server]

_____
[Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____

_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

**FILED**

APR 1 5 2019

LESLIE MASON
CIRCUIT CLERK

IN THE CIRCUIT COURT OF MISSISSIPPI COUNTY, ARKANSAS
CIVIL DIVISION

AMY LOGISTICS, LLC                                          PLAINTIFF

v.                              Case No. 47OCV-19-43(CT)

GREAT WEST CASUALTY COMPANY                                 DEFENDANT

<u>COMPLAINT FOR DECLARATORY JUDGMENT & DAMAGES</u>

Plaintiff Amy Logistics, LLC ("Amy Logistics"), for its complaint for
declaratory judgment and damages pursuant to Rule 57 of the Arkansas Rules of
Civil Procedure and Ark. Code Ann. § 16-111-101 *et seq.* against defendant Great
West Casualty Company ("Great West"), states:

INTRODUCTION

1.      Amy Logistics seeks a declaratory judgment declaring its rights and
affording relief from uncertainty with respect to legal relations between Amy
Logistics and Great West, pursuant to a certain commercial insurance policy issued,
sold, and delivered to Amy Logistics by Great West. Also, Amy Logistics seeks
damages at law against Great West for breach of contract; unfair, deceptive, and
unlawful trade practices; violation of Arkansas public policy and law; unjust
enrichment; and fraudulent misrepresentation. Amy Logistics also seeks equitable
relief including specific performance.

## PARTIES AND JURISDICTION

2.      Pursuant to Ark. Code Ann. § 16-111-101, courts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed.

3.      Pursuant to Ark. Code Ann. § 16-111-102, any person interested under a written contract or other writings constituting a contract may have determined any question of construction or validity arising under the instrument and may obtain a declaration of rights, status, or other legal relations thereunder.

4.      Amy Logistics is an Arkansas limited liability company with its principal place of business in Craighead County, Arkansas.

5.      Great West is a foreign corporation with its principal place of business at 1100 West 29th Street, South Sioux City, Nebraska 68776-0277.

6.      The events and actions described herein, including the damages incurred by Amy Logistics, all or substantially occurred in the State of Arkansas, and Amy Logistics' causes of action and claims for relief against Great West arise from actions and conduct of Great West in Mississippi County, Arkansas.

7.      The purpose of this action is, in part, to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, in accordance with Ark. Code Ann. § 16-111-102.

8.      All of the parties to the litigation are parties in interest who may claim an interest in this case.

2

9.      This Court has jurisdiction over the parties and subject matter of this action, and venue is, in accordance with Ark. Code Ann. § 16-60-101, proper herein.

## FACTUAL ALLEGATIONS

10.     Amy Logistics adopts and incorporates by reference hereto all allegations and averments against Great West as contained in Paragraphs 1 through 9 above.

11.     On or about January 15, 2016, at approximately 7:26 p.m., CRT Expedited, Inc., CRST International, Inc., and CRST Lincoln Sales, Inc. (jointly and individually "CRST"), acting through their agent and employee Daniel Pete Watson ("Mr. Watson"), were operating a commercial tractor-trailer, a 2013 Freightliner, traveling south on U.S. Interstate Highway 55 near mile marker 55.

12.     The CRST tractor-trailer driven by Mr. Watson was traveling at an excessively slow and unsafe rate of speed, and had been for approximately 50 miles, and did not have hazard signals activated on the tractor-trailer.

13.     Due to the CRST tractor-trailer's position on the highway, excessively reduced rate of speed, and lack of appropriate hazard signals, the CRST tractor-trailer was an impediment to traffic and caused a tractor-trailer operated by Amy Logistics' driver, Terry Wallace, to collide with the CRST tractor-trailer as they both arrived at mile marker 55.

14.     The crash resulted in Mr. Wallace's death and caused substantial financial losses and damages to Amy Logistics.

3

15.     Great West and National Indemnity Insurance Company ("National Indemnity") were notified of Mr. Wallace's death and National Indemnity, acting as the insurer for Amy Logistics, promptly opened a claim file and assigned the matter a claim number, specifically 70 03 369724, pursuant to Amy Logistics' policy of insurance through National Indemnity numbered 70 TRS028742. Great West, also acting as the insurer for Amy Logistics, opened a claim file and assigned the matter a claim number, specifically J67828 pursuant to Amy Logistics' policy of insurance through Great West numbered MCP21264A.

16.     Mr. Wallace's widow, Cynthia K. Wallace, filed suit in the Circuit Court of Mississippi County, Arkansas, on February 2, 2017, against CRST and Mr. Watson. Ms. Wallace filed an amended complaint that added Amy Logistics as a defendant on February 28, 2017.

17.     Great West and National Indemnity were promptly notified of Ms. Wallace's amended complaint filed against Amy Logistics and, acting as the insurers for Amy Logistics, provided a joint defense of Amy Logistics against Ms. Wallace's causes of action alleged against Amy Logistics.

18.     On March 20, 2017, National Indemnity provided a reservation of rights letter to Amy Logistics in which it noted that, while it agreed to continue its investigation into the matter and provide a defense to Amy Logistics in this lawsuit, it would provide such services under a "full and complete reservation of rights and defenses under the policy." *See* March 20, 2017, National Indemnity Letter, attached as Exhibit 1 and incorporated herein.

4

19.     On April 25, 2018, Amy Logistics filed a cross-claim against CRST and

Mr. Watson for negligence arising out of Mr. Watson's individual conduct as an

agent and employee of CRST that caused the tractor-trailer collision on January 15,

2016.

20.     On December 21, 2018, National Indemnity provided a second

reservation of rights letter to Amy Logistics, in which it noted that it would not

indemnify Amy Logistics "for any amounts awarded to Plaintiffs as a result of the

Lawsuit" but that it would continue to defend Amy Logistics in the lawsuit through

trial. *See* December 21, 2018, National Indemnity Letter, attached as Exhibit 2 and

incorporated herein.

21.     On January 7, 2019, an order of dismissal with prejudice was entered

in which the Circuit Court of Mississippi County, Arkansas, noted that Amy

Logistics, CRST, and Mr. Watson had "resolved the dispute between them" and

ordered that Amy Logistics' cross-claim against Mr. Watson and CRST were

dismissed with prejudice.

22.     On February 6, 2019, an order of dismissal with prejudice was entered

in which the Circuit Court of Mississippi County, Arkansas, noted that Ms. Wallace

and the other plaintiffs and Amy Logistics had "entered into a settlement

agreement" and that plaintiffs' causes of action against Amy Logistics were

"dismissed with prejudice."

23.     As part of the settlement agreement, Amy Logistics paid $25,000.00 to

plaintiffs for the dismissal of their claims with prejudice on February 6, 2019.

5

24.     During settlement negotiations, Amy Logistics was informed by Great West—for the first time—that Great West had chosen to deny coverage for Ms. Wallace's claims against Amy Logistics.  Great West also informed Amy Logistics that, as a result of Great West's decision to deny coverage, Great West would no longer defend Amy Logistics or indemnify Amy Logistics against any expenses incurred by Amy Logistics as a direct result of Ms. Wallace's lawsuit.  Great West also refused to renew insurance coverage for Amy Logistics after the accident that served as the basis for Ms. Wallace's lawsuit, Amy Logistics' objections notwithstanding.

25.     Despite Great West's decisions to deny coverage for Amy Logistics and to refuse to defend and indemnify Amy Logistics, Great West never sent—and Amy Logistics never received—any reservation of rights/coverage denial letter from Great West.  Great West never provided any sort of indication that it was reserving any rights to deny such coverage or to deny the duty to defend and indemnify Amy Logistics per the insurance policy entered into between Great West and Amy Logistics.

26.     All the required premiums for the coverage purchased from Great West have been paid by Amy Logistics and all other pertinent conditions to coverage have been satisfied, excused, or waived, and the policy issued to Amy Logistics by Great West and covering the liability represented by the claim of Ms. Wallace forms a binding contract between Amy Logistics and Great West.

6

27.    The conduct of Great West in threatening to and actually withholding coverage after originally accepting coverage for the claim, refusing to indemnify Amy Logistics for the expenses incurred in settling the dispute with Ms. Wallace, and refusing to renew insurance coverage for Amy Logistics is without justification in law or fact and, as described *infra*, to Amy Logistics' detriment.

## CLAIMS FOR RELIEF

### COUNT I – DECLARATORY JUDGMENT

28.    Amy Logistics adopts and incorporates by reference hereto all allegations and averments against Great West as contained in Paragraphs 1 through 27 above.

29.    There exists an actual controversy between Great West and Amy Logistics which is within the jurisdiction of this Court and involves potential rights and liabilities under a contract or series of contracts.

30.    Amy Logistics has fully performed all its obligations owed to Great West pursuant to the policy of insurance issued through Great West, numbered MCP21264A. Great West has not, however, performed or does not intend to perform all its obligations owed to Amy Logistics pursuant to the policy of insurance, in particular Great West's obligations to provide continued coverage for the claims made by Ms. Wallace, to indemnify Amy Logistics for the expenses it has incurred as a direct result of the claims made by Ms. Wallace, and to permit Amy Logistics to renew the policy of insurance issued through Great West to Amy Logistics.

7

31.    In accordance with the Arkansas Declaratory Judgments Act, Ark.
Code Ann. §§ 16·111·101 – 16·111·111, and Rule 57 of the Arkansas Rules of Civil
Procedure, this Court should declare the rights, status, and other legal relations
between Great West and Amy Logistics with respect to the policy of insurance
issued through Great West, numbered MCP21264A and, specifically, the obligations
of Great West to provide continued coverage for the claims made by Ms. Wallace, to
indemnify Amy Logistics for the expenses it has incurred as direct result of the
claims made by Ms. Wallace, and to permit Amy Logistics to renew the policy of
insurance issued through Great West to Amy Logistics.

32.    Amy Logistics respectfully requests a declaratory judgment, pursuant
to Ark. Code Ann. §§ 16·111·101 – 16·111·111, in order to settle and afford Amy
Logistics relief from uncertainty and insecurity with respect to Great West's
obligations pursuant to the policy of insurance issued to Amy Logistics.

33.    Amy Logistics further requests that this Court order a "speedy
hearing" of this action pursuant to Rule 57 of the Arkansas Rules of Civil
Procedure.

## COUNT II – BREACH OF CONTRACT

34.    Amy Logistics adopts and incorporates by reference hereto all
allegations and averments against Great West as contained in Paragraphs 1
through 33 above.

8

35. Amy Logistics and Great West are competent parties to enter, and in fact entered, into a mutually agreed to and valid contract, specifically the contract of insurance, issued through Great West, numbered MCP21264A.

36. The required premiums were paid on the policy of insurance and all other pertinent conditions to coverage were satisfied, excused, or waived.

37. Great West was required under the policy to: (1) provide to Amy Logistics continued coverage for the claims made by Ms. Wallace and the associated risks; (2) indemnify Amy Logistics for all expenses incurred by it as a direct result of the claims made by Ms. Wallace; and (3) permit Amy Logistics the option to renew the contract of insurance.

38. Great West has breached the contract of insurance by: (1) refusing to continue coverage for the claims made by Ms. Wallace without first providing a reservation of rights/coverage denial letter; (2) refusing to indemnify Amy Logistics for its expenses incurred by it as a direct result of the claims made by Ms. Wallace without first providing a reservation of rights/coverage denial letter; and (3) refusing to permit Amy Logistics the option to renew coverage under the contract of insurance.

39. Amy Logistics fully performed all its obligations pursuant to the terms and conditions of the contract of insurance entered into by the parties.

40. As a direct and proximate result of Great West's breach of its contractual duties and obligations, Amy Logistics has incurred damages, including costs of defending the claims made by Ms. Wallace and the $25,000.00 paid in

settlement to plaintiffs in Ms. Wallace's lawsuit, plus pre- and post-judgment interest at the maximum lawful rates and costs of collection, including attorney fees.

COUNT III – UNJUST ENRICHMENT

41.     Amy Logistics adopts and incorporates by reference hereto all allegations and averments against Great West as contained in Paragraphs 1 through 40 above.

42.     In the alternative to Amy Logistics' allegations that Great West has breached a contract with Amy Logistics, Great West has been unjustly enriched to Amy Logistics' detriment.

43.     Amy Logistics paid premiums under its policy of insurance with Great West, and Great West received the benefit of such payments.

44.     The circumstances were such that Amy Logistics reasonably expected to be provided the value of such premium payments.

45.     Great West was aware that Amy Logistics was paying such premiums with the expectation of being provided valuable services, including protection against liability claims like Ms. Wallace's, indemnification for any expenses incurred by Amy Logistics directly related to Ms. Wallace's claims, and the option to renew the policy of insurance.

46.     The reasonable value of the services expected is no less than, and likely exceeds, the monetary value of the risk exposure represented by the claims of

10

Ms. Wallace, the $25,000.00 paid to plaintiffs in Ms. Wallace's lawsuit in settlement by Amy Logistics, and the costs of defense.

COUNT IV – PROMISSORY ESTOPPEL

47.     Amy Logistics adopts and incorporates by reference hereto all allegations and averments against Great West as contained in Paragraphs 1 through 46 above.

48.     In the alternative to Amy Logistics' allegations that Great West breached a contract with Amy Logistics, Amy Logistics contends that Great West made promises to Amy Logistics that: (1) coverage for claims like that pursued by Ms. Wallace would be covered by Great West; (2) Great West would indemnify Amy Logistics for any expenses incurred direct related to claims like that pursued by Ms. Wallace; and (3) Amy Logistics had the option to renew the policy of insurance issued through Great West.

49.     Great West should have reasonably expected Amy Logistics to act in reliance on the promises made by Great West.

50.     Amy Logistics acted in reasonable reliance on the promises of Great West, in continuing to make premium payments to Great West to Amy Logistics' detriment.

51.     Injustice can only be avoided by enforcing the promises made by Great West to: (1) provide coverage for Ms. Wallace's claims; (2) indemnify Amy Logistics for its expenses incurred by it directly related to Ms. Wallace's claims, including the $25,000.00 paid by Amy Logistics in settlement to the plaintiffs in Ms. Wallace's

11

lawsuit; and (3) permitting Amy Logistics the option to renew its policy of insurance with Great West.

COUNT V – DECEPTIVE TRADE PRACTICES

52.     Amy Logistics adopts and incorporates by reference hereto all allegations and averments against Great West as contained in Paragraphs 1 through 51 above.

53.     Amy Logistics is a "person" entitled to protection under the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 et seq.

54.     Great West intentionally and knowingly made false or misleading representations of fact concerning the coverage of the claim made by Ms. Wallace and agreement to: (1) provide coverage for the claims made by Ms. Wallace; (2) indemnify Amy Logistics for expenses incurred by it directly related to the claims made by Ms. Wallace; and (3) permit Amy Logistics the option to renew its policy of insurance issued through Great West, violating the Arkansas Deceptive Trade Practices Act, Ark. Code Ann.  § 4-88-101 et seq.

55.     The intentional and systematic actions of Great West are unconscionable acts or practices in business, commerce, or trade, violating the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 et seq.

56.     The intentional and systematic actions of Great West that violate the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 et seq., have caused actual financial loss to Amy Logistics.

12

57.    In addition to actual damages sustained as a result of the conduct of Great West, Amy Logistics is entitled to its attorneys' fees and costs of litigation pursuant to the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 et seq.

COUNT VI - ESTOPPEL

58.    Amy Logistics adopts and incorporates by reference hereto all allegations and averments against Great West as contained in Paragraphs 1 through 57 above.

59.    Amy Logistics was unaware of the coverage and indemnification positions being taken by Great West for more than one year after Amy Logistics was first sued by Ms. Wallace in the Circuit Court of Mississippi County, Arkansas, because Great West never sent to Amy Logistics any reservation of rights/coverage denial letter throughout Great West's Ms. Wallace's lawsuit.

60.    Through Great West's accepting as covered, management of, and defense of Amy Logistics during Ms. Wallace's lawsuit and failing to provide to Amy Logistics a reservation of rights/coverage denial letter, Great West led Amy Logistics to believe that coverage for Ms. Wallace's claims existed and that Great West would indemnify Amy Logistics for expenses incurred by it directly related to Ms. Wallace's claims (which included any settlement amounts paid by Amy Logistics to the plaintiffs in Ms. Wallace's lawsuit).

61.    Amy Logistics reasonably relied upon, to its detriment, the representations of Great West regarding the existence of coverage for Ms. Wallace's

13

claims, indemnification of Amy Logistics for its expenses incurred directly related to the claims of Ms. Wallace, and the option to renew coverage.

62.     Great West is, as a consequence, estopped from asserting policy defenses based upon its failure to timely advise Amy Logistics of its positions on coverage, indemnification, and renewal.

COUNT VII - WAIVER

63.     Amy Logistics adopts and incorporates by reference hereto all allegations and averments against Great West as contained in Paragraphs 1 through 62 above.

64.     Amy Logistics was unaware of the coverage position being taken by Great West for more than one year after the lawsuit was commenced by Ms. Wallace against Amy Logistics.

65.     Through its accepting as covered, management of, and defense of Amy Logistics against Ms. Wallace's claims, Great West led Amy Logistics to believe that coverage for Ms. Wallace's claims existed.

66.     Amy Logistics reasonably relied upon, to its detriment, the representations of Great West regarding the existence of coverage for Ms. Wallace's claims.

67.     Amy Logistics has, as a consequence, waived any policy defenses which might otherwise apply to coverage for Ms. Wallace's claims.

68.     Amy Logistics respectfully demands a trial by jury on all appropriate issues of fact and law.

14

69.     Amy Logistics reserves the right to amend this Complaint for

Declaratory Judgment upon completion of investigation and discovery and, in

particular, to add causes of action and claims for damages and specific performance.

WHEREFORE, Amy Logistics, LLC respectfully seeks a declaratory

judgment pursuant to Ark. Code Ann. § 16-111-101, et seq., and Ark. R. Civ. P.

declaring satisfaction of all obligations owed by Great West Casualty Company to

Amy Logistics, and for all other relief to which Amy Logistics is entitled.

> QUATTLEBAUM, GROOMS & TULL PLLC
> 4100 Corporate Center Drive, Suite 310
> Springdale, Arkansas 72762
> Telephone: (479) 444-5200
> Facsimile: (479) 444-6647
> vchadick@qgtlaw.com
> pelmore@qgtlaw.com
>
> By: _____
> Vincent O. Chadick, Ark. Bar No. 94075
> Philip A. Elmore, Ark. Bar No. 2015199
>
> *Attorneys for Amy Logistics, LLC*



# National Indemnity Company

A member of the Berkshire Hathaway group of insurance companies

**FILED**

APR 1 5 2019

LESLIE MASON
CIRCUIT CLERK

March 20, 2017

PROOF OF MAILING

AMY LOGISTIC LLC
PO BOX 17036
JONESBORO, AR 72401

RE:     Claim Number:     70 03 369724
        Policy Number:    70 TRS028742
        Insured:          AMY LOGISTIC LLC
        Claimant:         DANIEL WATSON
        Date of Loss:     01-15-2016
        Driver:           TRACY WALLACE

Dear Amy Logistic LLC:

As you are aware, National Indemnity Company ("National Indemnity") provided a truckers insurance policy for Amy Logistic, LLC, which was in effect on January 15, 2016. The above-captioned loss was reported to National Indemnity on January 19, 2016. According to the news articles located about this loss, Tracy Wallace was operating a truck on behalf of Amy Logistic on I-55 in the Jonesboro, Arkansas area on the evening of January 15, 2016 when he struck the rear of another tractor trailer, driven by Daniel Watson for CRST Expedited, Inc. We understand the CRST vehicle was traveling slowly in the roadway without any engaged emergency lights or signals. Mr. Wallace died as the result of injuries sustained in this loss, and Mr. Watson was transported from the scene with injuries.

Mr. Wallace's wife, Cynthia Wallace, individually and as administrator of Mr. Wallace's estate and as parent of the minor children of Mr. and Mrs. Wallace, is pursuing damages associated with or deriving from her husband's death. Previously, Mrs. Wallace sued the driver of the CRST truck and its owner. National Indemnity recently received notice that Mrs. Wallace has now additionally sued Amy Logistics in the Circuit Court of Mississippi County, Arkansas, alleging your failure to maintain the truck caused or contributed to the collision and Mr. Wallace's death. In the Complaint, the plaintiffs are seeking an unspecified amount over $21,000,000 in punitive and compensatory damages resulting from the defendants' negligence and gross negligence.

This letter is to acknowledge receipt of the subject lawsuit and to remind you that your policy with National Indemnity may not cover the damages associated with this loss. We refer you to your policy, specifically Form CA0001 (03/10), which states:

**B. Exclusions**

Claim Operations • P O Box 31361 • Omaha, Nebraska 68131-0361 • Telephone (402) 916-3800 • Facsimile: (402) 916-3031
E-mail: reports@nationalindemnity.com



EXHIBIT
1

**National Indemnity Company**
March 19, 2017
Page 2 of 4

This insurance does not apply to any of the following:

\*\*\*

**3. Workers' Compensation**

Any obligation for which the "Insured" or the "Insured's" Insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:
 a. An "employee" of the "Insured" arising out of and in the course of:
 (1) Employment by the "insured"; or
 (2) Performing the duties related to the conduct of the "insured's" business; or
 b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:
 (1) Whether the "insured" may be liable as an employer or in any other capacity; and
 (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

In the event Mr. Wallace was an employee of yours or performing the duties related to the conduct of your business, there would be no coverage for this loss.

We wish to remind you that your policy limit is $1,000,000 for all claims made against you in this loss. In the event your policy applies to this loss and the claims made against you exceed the policy limit, National Indemnity will only pay up to the policy limit. You would be personally responsible for any excess verdict or exposure, if you were found to be legally liable for the damages.

We also refer you to your policy, which states:

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Coverage**

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
 a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**National Indemnity Company**
March 19, 2017
Page 3 of 4

(1) How, when and where the "accident" or "loss" occurred,
(2) The "insured's" name and address; and
(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:
(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.
(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".
(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".
(4) Authorize us to obtain medical records or other pertinent information.
(5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:
(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.
(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.
(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.
(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

Your cooperation with our investigation of this loss is imperative. To the extent you fail to comply with the policy provisions, there may be no coverage for this loss. <u>Your lack of cooperation could jeopardize your coverage for this loss.</u>

As indicated in previous correspondence, we have retained the services of attorney Jerry Sallings of the firm Wright, Lindsey & Jennings, LLP. Mr. Sallings will provide your defense in this matter, and he will coordinate investigation in anticipation of litigation in the meantime. Mr. Sallings can be reached via telephone at (501) 371-0808 or via mail at 200 W. Capitol Avenue, Suite 2300, Little Rock, AR 72201.

If you wish, you may retain your own counsel, at your own expense, to assist in the investigation, defense, or resolution of this claim. National Indemnity and Mr. Sallings will cooperate fully with any attorney or attorneys you retain to represent your interests in connection with possible recovery by the claimants in excess of the applicable policy limit or outside the damages covered by the National Indemnity policy.

National Indemnity hereby agrees to continue our investigation and provide your defense in this lawsuit at this time under a full and complete reservation of rights and defenses under the policy. Please note that our involvement in this matter and any further action taken by us is not intended as and should not be construed as a waiver of any rights or defenses under the attendant policy or an admission of any obligations pursuant to the policy terms. We specifically reserve the right to assert additional coverage defenses in the future, should it be deemed proper to do so. Similarly, National Indemnity shall not be estopped from raising any of its coverage defenses by reason of its willingness to undertake this investigation at this point.

**National Indemnity Company**
March 19, 2017
Page 4 of 4

National Indemnity reserves the right to file a declaratory relief action against you and other parties in which we will seek a ruling from the court that neither defense nor indemnity of owed under the policy. Additionally, we reserve the right to seek reimbursement of the amount of attorney fees and costs incurred on your behalf, plus interest, should it later be determined that the policy does not cover damages associated with the claim. We reserve the right to deny coverage and withdraw from any further participation in this matter altogether should facts be developed that would indicate we should do so.

This reservation of rights extends to all facts, known and unknown, as they pertain to this matter. We reserve the right to amend this reservation in the future. Please feel free to contact the undersigned should you have any information or documentation that you believe might affect coverage under your policy. If you disagree with any portion of this letter or you object to our continued investigation of this loss, subject to the coverage reservations outlined, please notify the undersigned in writing immediately.

If you are served with or otherwise receive any legal papers related to this claim, call me immediately and then fax those papers to me. My fax number is (402) 916-3031. If you don't have access to a fax machine, please mail the papers to me. Be sure to put the claim number on everything you send to me. Please call me at 402-916-3177 if you have any questions regarding this claim or wish to discuss this matter.

Sincerely,

*Stephanie Hynes*

Stephanie Hynes
Senior Claim Examiner

---

*It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits.*

---

cc:   GRAHAM-ROGERS, INC.
      BARTLESVILLE
      OK


      Jerry Sallings, via e-mail only

      Andy Rossi, via e-mail only

 **National Indemnity**
group of insurance companies



**FILED**

APR 1 5 2019

LESLIE MASON
CIRCUIT CLERK.

National Indemnity Company • National Fire & Marine Insurance Company • National Liability & Fire Insurance Company
Columbia Insurance Company • National Indemnity Company of Mid-America • National Indemnity Company of the South

December 21, 2018

PROOF OF MAILING

AMY LOGISTIC LLC
PO BOX 17036
JONESBORO, AR  72401

RE:   Claim Number:      70 03 369724
      Policy Number:     70 TRS028742
      Insured:           AMY LOGISTIC LLC
      Claimant:          CYNTHIA WALLACE FOR THE ESTATE OF TRACY
                         WALLACE
      Date of Loss:      01-15-2016
      Driver:            TRACY WALLACE

Dear Amy Logistic LLC:

This letter follows correspondence issued to Amy Logistics, LLC on March 19, 2017.  A copy of that letter has been enclosed for your reference and its contents are specifically incorporated herein.

As you are aware, National Indemnity Company ("National Indemnity") has been providing a defense under a reservation of rights to Amy Logistics, LLC with respect to the lawsuit captioned *Cynthia K. Wallace, As Special Administrator of the Estate of Tracy E. Wallace, Deceased, et al., v CRST, Daniel Pete Watson, and Amy Logistics, LLC,* filed in the Circuit Court of Mississippi County, Arkansas, Case No. 47B-CV-2017-23 ("Lawsuit").  The Lawsuit is currently scheduled to go to trial on January 6, 2019.

National Indemnity provided a truckers insurance policy for Amy Logistic, LLC number 70 TRS028742-02, with effective dates of January 31, 2015 to January 31, 2016 ("Policy").  We remind you that the Policy does not appear to apply to the Lawsuit and the damages claimed therein.  We refer you again to the Policy, specifically Form CA0001 (03/10), which states:

   **B. Exclusions**

   This insurance does not apply to any of the following:

   ***

   **3. Workers' Compensation**

      Any obligation for which the "insured" or the "insured's" insurer may be held liable under
      any workers' compensation, disability benefits or unemployment compensation law or any
      similar law.

Claim Operations • P. O. Box 31361 • Omaha, Neb.....        02) 916-3600 • Facsimile: (402) 916-3031
                                  E-mail: r.....

         *Members of the Berks.....            e companies*

**EXHIBIT**

2



**National Indemnity**
group of insurance companies

December 21, 2018                                         Page 2

### 4. Employee Indemnification And Employer's Liability

"Bodily injury" to:
    a. An "employee" of the "insured" arising out of and in the course of:
        (1) Employment by the "insured"; or
        (2) Performing the duties related to the conduct of the "insured's" business; or
    b. The spouse, child, parent, brother or sister of that "employee" as a consequence of
Paragraph a. above.

This exclusion applies:
    (1) Whether the "insured" may be liable as an employer or in any other
capacity; and
    (2) To any obligation to share damages with or repay someone else who must
pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled
to workers' compensation benefits or to liability assumed by the "insured" under an
"insured contract". For the purposes of the Coverage Form, a domestic "employee" is
a person engaged in household or domestic work performed principally in connection
with a residence premises.

Based upon our understanding of the facts and circumstances of the claim, Mr. Wallace was an employee of Amy Logistics, LLC and performing duties related to the conduct of your business at the time of the January 15, 2016 accident. The Policy specifically excludes coverage for bodily injury to an employee of the insured. The Policy also specifically excludes coverage for any amounts that Amy Logistics, LLC may be held liable under any workers' compensation law. Accordingly, it appears the Policy will not indemnify you for any amounts awarded to Plaintiffs as a result of the Lawsuit. National Indemnity will continue to defend Amy Logistics from the Lawsuit through trial.

We wish to remind you that the combined single limit of the Policy for liability is $1,000,000, which has been reduced by $65,000 for payment of other liability claims associated with the January 15, 2016 accident. Accordingly, the remaining Policy limit is $935,000. In the event the Policy applies to this loss and the claims made against you exceed the remaining Policy limit, National Indemnity will only pay up to the Policy limit. You would be personally responsible for any excess verdict or exposure, if you were found to be legally liable for the damages.

As indicated in previous correspondence, we have retained the services of attorney Jerry Sallings of the firm Wright, Lindsey & Jennings, LLP. At this time, Mr. Sallings will continue to provide your defense in this matter. Mr. Sallings can be reached via telephone at (501) 371-0808 or via mail at 200 W. Capitol Avenue, Suite 2300, Little Rock, AR 72201.

If you wish, you may retain your own counsel, at your own expense, to assist in the investigation, defense, or resolution of this claim. National Indemnity and Mr. Sallings will cooperate fully with any attorney or attorneys you retain to represent your interests in connection with possible recovery by the claimants in excess of the applicable policy limit or outside the damages covered by the National Indemnity policy.



**National Indemnity**
group of Insurance companies

December 21, 2018                                    Page 3

National Indemnity hereby agrees to continue our investigation and provide your defense in this lawsuit at this time under a full and complete reservation of rights and defenses under the policy. Please note that our involvement in this matter and any further action taken by us is not intended as and should not be construed as a waiver of any rights or defenses under the attendant policy or an admission of any obligations pursuant to the policy terms. We specifically reserve the right to assert additional coverage defenses in the future, should it be deemed proper to do so. Similarly, National Indemnity shall not be estopped from raising any of its coverage defenses by reason of its willingness to undertake this investigation at this point.

National Indemnity reserves the right to file a declaratory relief action against you and other parties in which we will seek a ruling from the court that neither defense nor indemnity of owed under the policy. Additionally, we reserve the right to seek reimbursement of the amount of attorney fees and costs incurred on your behalf, plus interest, should it later be determined that the policy does not cover damages associated with the claim. We reserve the right to deny coverage and withdraw from any further participation in this matter altogether should facts be developed that would indicate we should do so.

This reservation of rights extends to all facts, known and unknown, as they pertain to this matter. We reserve the right to amend this reservation in the future. Please feel free to contact the undersigned should you have any information or documentation that you believe might affect coverage under your policy. If you disagree with any portion of this letter or you object to our continued investigation of this loss, subject to the coverage reservations outlined, please notify the undersigned in writing immediately.

Please call me at 402-916-3207 if you have any questions regarding this claim or wish to discuss this matter.

Sincerely,

National Indemnity Company

Mark Richardson, CPCU
Claim Operations

*It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits.*

IN THE CIRCUIT COURT OF MISSISSIPPI COUNTY, ARKANSAS
CIVIL DIVISION

AMY LOGISTICS, LLC                                                    PLAINTIFF

v.                                   Case No. 47OCV-19-43(CT)

GREAT WEST CASUALTY COMPANY                                          DEFENDANT

## AGREED ORDER OF EXTENSION

Upon the stipulation of the parties, the Court finds and orders that the

Defendant, Great West Casualty Company, shall have up to and including June 5,

2019, to file its initial responsive pleading  or motion in this proceeding.

IT IS SO ORDERED.


_____
HONORABLE CINDY THYER


_____5/24/19_____
DATE

PREPARED BY:

QUATTLEBAUM, GROOMS & TULL PLLC
4100 Corporate Center Drive, Suite 310
Springdale, Arkansas 72762
Telephone: (479) 444-5200
Facsimile: (479) 444-6647
vchadick@qgtlaw.com
pelmore@qgtlaw.com

By: _____
     Vincent O. Chadick, Ark. Bar No. 94075
     Philip A. Elmore, Ark. Bar No. 2015199

*Attorneys for Amy Logistics, LLC*

APPROVED AS TO FORM BY:

BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: (901) 577-2159
Facsimile: (901) 577-0818
rtom@bakerdonelson.com

By: _____
     Robert F. Tom, Ark. Bar No. 2013026

*Attorneys for Great West Casualty Company*

2

# EXHIBIT B

## Kisber, Zachary

| | |
|---|---|
| **From:** | Philip Elmore <pelmore@qgtlaw.com> |
| **Sent:** | Tuesday, June 04, 2019 12:13 PM |
| **To:** | Tom, Robert |
| **Cc:** | Vince Chadick; Kisber, Zachary |
| **Subject:** | Re: Amy Logistics, LLC v. Great West casualty Company |

*Thank you, Robert. I'm in a hearing out of town this afternoon, and I'll provide a more substantive response upon my return to the office tomorrow. The short answer, however, is, Yes – Amy Logistics will be seeking in excess of $100,000 for lost profits arising from its forced closure. My client understands that Great West will defend on liability, thus my client's modest (from its perspective) counter-demand.*

*I can provide additional information and the manner in which we'll amend the complaint, if you need it, after I'm back in the office.*

*Thanks, again.*

Sent from my iPhone.

On Jun 4, 2019, at 11:19 AM, Tom, Robert <rtom@bakerdonelson.com> wrote:



> **From:** Philip Elmore [mailto:pelmore@qgtlaw.com]
> **Sent:** Thursday, May 30, 2019 3:54 PM
> **To:** Tom, Robert
> **Cc:** Vince Chadick; Kisber, Zachary
> **Subject:** RE: Amy Logistics, LLC v. Great West casualty Company
>
> Robert,

1